UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK JORDAN,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ANDRE MATEVOUSIAN,<br><br>　　　　Respondent. | No.  1:15-cv-01895-LJO-SKO  HC<br><br>**FINDINGS AND RECOMMENDATION THAT COURT DISMISS PETITION AS MOOT**<br><br>**(Doc. 19)** |

Petitioner Mark Jordan is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  On May 20, 2016, Respondent Andre Matevousian, Warden of the U.S. Penitentiary, Atwater, California, moved to dismiss the petition as moot. Having carefully reviewed the record as a whole and applicable law, the undersigned recommends that the Court dismiss the petition as moot.

**I.　Procedural and Factual Background**

While watching a softball game at the U.S. Penitentiary-Lee, Pennington Gap, Virginia, on July 10, 2010, Petitioner saw two fellow inmates, Paul Weakley and Kenneth Mills, grappling on the ground.  Weakley held a shank (homemade knife); Mills was unarmed.  Petitioner concluded that Mills could not break free without exposing himself to being stabbed.  Petitioner walked up to Mills and Weakley, placed his foot on the wrist of the hand in which Weakley held

the shank, and told the other prisoners to break it up. Mills and Weakley disengaged, and Petitioner retreated.

Staff was unaware of the incident until a staff member encountered Weakley as he was walking from the softball field to the gym and observed that Weakley had sustained injuries consistent with his having been involved in an altercation. Staff discovered Mills near the volleyball court with injuries consistent with his having been involved in an altercation. Both Weakley and Mills were escorted to Health Services where each was assessed. Weakley was referred for outside treatment. Mills refused treatment at an outside hospital despite being advised of his need for further treatment.

Staff review of video surveillance tapes following the incident revealed that the altercation began when Mills attacked Weakley from behind. The inmates fell to the ground, fighting over the weapon that was in Weakley's possession when Petitioner intervened.

On July 11, 2010, SIS Tech B. Calton filed an incident report charging Petitioner with assaulting with serious injury. When the Unit Disciplinary Committee ("UDC") met on July 14, 2010, Petitioner denied assaulting anyone. On July 16, 2010, the UDC referred the matter to a Disciplinary Hearing Officer ("DHO") with the recommendation that Petitioner lose 41 days of good conduct time and loss of commissary privileges for 180 days.

The DHO heard the matter on July 27, 2010. Petitioner pleaded guilty, stating "Everything is true. I walked up to Weakley because he had a knife. I put my foot on his arm, wanting Mills to break away. I wasn't trying to assault anyone." Doc. 1 at 30. Petitioner waived witnesses Mills, Weakley, and Nicholas Vasiliades, both verbally and by signing the notice of disciplinary hearing. The DHO found that Petitioner violated Inmate Disciplinary Policy code 224, Assaulting Without Serious Injury. He wrote:

> Though you denied this prohibited act, the DHO based his decision, in part, on your statement, that you put your foot on his (Weakley's) arm, wanting Mills to break away. Making your behavior the unwanted touching of another, along with the reporting officer's account of the incident, in which your behavior was captured via recorded VICON surveillance, depicting you walk to where inmates Weakley and Mills were engaged in an altercation, then placing your foot on Weakley's arm and upper area, rendering Weakley unable to defend himself. You freely

2

> chose to intervene into what was clearly an armed confrontation, during which serious injuries had been inflicted. Your assertion that you only wanted Mills to break away lacks credibility. The DHO concludes that you intervened upon determining that Weakley was effectively defending himself against Mills' assault. You clearly demonstrated that you knew your actions and behavior to be assaultive by both leaving the area to avoid identification and by failing to notify staff of your involvement.

Doc. 1 at 31.

The DHO sanctioned Petitioner with (1) disallowance of 27 days' good conduct time, (2) 15 days of disciplinary segregation (suspended for 90 days), and (3) loss of visiting privileges for 120 days.

On November 1, 2010, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the Western District of Virginia. *See Jordan v. Zych*, 2011 WL 2447937 (W.D. Va. June 15, 2011) (Civil No. 7:10-cv-00491). Petitioner asserted twenty grounds for habeas relief. *Id.* Respondent moved to dismiss the petition. *Id.* In a written opinion, the Court dismissed Petitioner's due process claims as lacking merit (*Id.* at *4), rejected Petitioner's claims that prison officials violated his due process rights by violating various federal procedural provisions (*Id.* at *6), dismissed Petitioner's claims under 42 U.S.C. § 2000bb-1(a) (*Id.*), and denied Petitioner's motion to transfer the petition to the district court for the district in which Petitioner then was incarcerated (*Id.*). On June 15, 2011, the Virginia district court dismissed the petition. *Id*. at *7.

On May 4, 2011, the Bureau of Prisons issued an amended DHO report. In the report, the DHO further clarified his rejection of Petitioner's claim that he sought only to permit Mills to escape the stand-off:

> Your assertion that you only wanted Mills to break away lacks merit in deciding the issue without question. The DHO considered your staff representative[']s statement he observed your behavior from recorded video to be exactly as your statement given, but your behavior to step on Weakley's arm constituted an assault regardless of your intention. While it is unclear to the DHO who initiated the altercation and who was the aggressor based on the injuries both sustained, your involvement [*sic*] to involve yourself in it by stepping on one of the participant[']s arm could not be overlooked or ignored under any circumstance.

Doc. 1 at 39.

The DHO added:

> The action on the part of any inmate to assault or attempt to assault another person, whether or not serious injury is inflicted, threatens the health, safety, and welfare of not only the inmate involved, but that of all other staff and inmates. Inmates observing the assault may become involved thus creating a larger disturbance for staff to control. Assaults make it difficult to provide security for all concerned.

Doc. 1 at 40.

After Petitioner exhausted his administrative appeals of the 2011 determination, he filed a petition for writ of habeas corpus in the U.S. District Court for the Middle District of Pennsylvania. *Jordan v. Bledsoe* (M.D.Pa. No. 1:11-cv-01836 WWC).

The incident report was reissued on September 27, 2012, and a new DHO hearing was held on October 9, 2012. The DHO presented the written, sworn statement of Weakley, who wrote, "I really don't have anything to say about this. The video shows everything."[1] Doc. 1 at 52. Petitioner disputed the authenticity of Weakley's statement to prison officials and attempted unsuccessfully to introduce an earlier, contradictory affidavit prepared by Weakley, which the DHO rejected as unverifiable. Petitioner also submitted statements signed by 18 inmates, who claimed to have been eyewitnesses to the incident and to have seen Petitioner do nothing more than attempt to break up the fight, and who attested to Petitioner's leadership, intelligence, and good reputation. Petitioner also made a statement, which was summarized as follows:

> [B]asically, I won't argue with the video, but I do take issue with the statement that Weakley could not defend himself. These guys were tussling on the ground. Weakley had a knife. Mills was unarmed. I walked over to break up the altercation and stepped on Weakley's arm so he could not use the knife. I told Mills to get up and told him not to worry about the knife. He did so. I then let Weakley up. I didn't know Mills or Weakley at the time.

Doc. 1 at 54.

On May 1, 2013, Petitioner moved to voluntarily dismiss the 2011 petition without prejudice in lieu of filing an amended petition to address the 2012 determination. *Jordan v. Bledsoe*, Doc. 37 (M.D.Pa. No. 1:11-cv-01836 WWC).

///

---

[1] Mills was not called to testify because he had died since the altercation.

4

Petitioner pursued his administrative appeals as to the DHO's 2012 determination. On December 30, 2014, the Acting Administrator of National Inmate Appeals, denied Petitioner's motion for expunction and found the DHO decision to have been reasonable and supported by the evidence submitted at the hearing. The Administrator rejected Petitioner's claim that his due process rights were violated and found the sanctions imposed to have been commensurate with the level of the offense and in compliance with policy. On December 21, 2015, Petitioner filed the above-captioned petition for writ of habeas corpus.

On January 29, 2016, the BOP notified petitioner of its intent to conduct a second rehearing on January 29, 2016. Despite Mills' earlier death, Petitioner refused to sign the notice of disciplinary hearing (Form BPS 294) after officials refused to arrange to call Mills as a witness.

On February 8, 2016, Petitioner mailed a motion for a temporary restraining order to prohibit the Bureau of Prisons from conducting a rehearing of the disciplinary action that is the subject of the above-captioned petition.

Following a delay to permit Petitioner to arrange to present Vasiliades as a witness, the rehearing was held on February 10, 2016. Vasiliades provided a statement; Weakley's full witness statement on behalf of Petitioner was presented. Petitioner stated," I intervened to break up the incident. I did put my foot on Weakley's hand to break it up. I have written statement [*sic*] as well. Thank you for giving me a fair shot. I got all my evidence in." Doc. 19-4 at 2. The DHO prepared an extensive discussion of the evidence presented and the reasoning applied in evaluating it. "Based on the greater weight of the evidence (the officer's written report, the supporting memo, the video and the statements of [Petitioner], the inmate witnesses statements [and] the staff representative review of the video," the DHO found that Petitioner violated Code 224, assaulting a person without serious injuries.

This Court received Petitioner's motion for a temporary restraining order on February 11, 2016. On February 25, 2016, the Court denied as moot Petitioner's motion for a temporary restraining order.

///

1   On March 28, 2016, Petitioner filed an administrative appeal of the 2016 rehearing with
the BOP Regional Director.  The Regional Director denied relief on April 14, 2016.

On May 20, 2016, contending that the above-captioned petition was moot, Respondent filed the pending motion to dismiss for lack of jurisdiction.

## II.     Petition Must Be Dismissed as Moot

Federal courts' constitutional jurisdiction extends only to actual cases or controversies. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70-71 (1983).  The case or controversy requirement, articulated in Article II, Section 2 of the U.S. Constitution, prevents federal courts from deciding "questions that cannot affect the rights of litigants in the case before them." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotation marks omitted).  A petitioner for writ of habeas corpus becomes moot when it no longer presents a case or controversy.  *Wilson v. Terhune*, 319 F.3d 477, 479 (9th Cir. 2003). When a federal court cannot redress a party's actual injury with a favorable judicial decision, the case is moot and must be dismissed.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  "Mootness is jurisdictional." *Burnett v. Lampert*, 432 F.3d 996, 1000-01 (9th Cir. 2005).

In support of this motion to dismiss, Respondent has submitted documentation of the 2016 rehearing of the charge against Petitioner.  In the ensuing determination, the DHO (1) addressed Petitioner's claims concerning his ability to present witnesses on his behalf and (2) more fully articulated the reasoning by which Petitioner's admitted action in intervening in Mills' and Weakley's fight constituted assault.  The 2016 determination again finds that Petitioner violated Code 224, assaulting a person without serious injuries, and imposes the same penalties.

The 2016 determination renders the 2012 determination moot.  Because Petitioner's loss of good conduct time is now based on the 2016 determination, addressing his claims relating to the 2012 determination will not provide meaningful relief.  When, as a result of intervening events, a court cannot provide effectual relief in favor of the petitioner, the court should dismiss the proceeding as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

///

///

### III. <u>Certificate of Appealability</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)  (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>    (B) the final order in a proceeding under section 2255.
>
>    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>    (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate

///

"something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

## IV.     Conclusion and Recommendation

The undersigned recommends that the Court dismiss the Petition for writ of habeas corpus and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 11, 2016**                         /s/ *Sheila K. Oberto*
                                                                          UNITED STATES MAGISTRATE JUDGE